AMBRO, Circuit Judge,
concurring.
I concur in the result reached by Judge Jordan’s thoughtful opinion. I write separately to urge the Supreme Court to provide a clarifying explanation of its statement in Missouri v. Holland that “[i]f [a] treaty is valid there can be no dispute about the validity of the statute [implementing that treaty] under Article 1, Section 8, as a necessary and proper means to execute the powers of the Government.” 252 U.S. 416, 432, 40 S.Ct. 382, 64 L.Ed. 641 (1920).[1]
*170 Absent that undertaking, a blank cheek exists for the Federal Government to enact any laws that are rationally related to a valid treaty and that do not transgress affirmative constitutional restrictions, like the First Amendment. This acquirable police power, however, can run counter to the fundamental principle that the Constitution delegates powers to the Federal Government that are “few and defined” while the States retain powers that are “numerous and indefinite.” The Federalist No. 45 (James Madison).
Since Holland, Congress has largely resisted testing the outer bounds of its treaty-implementing authority. See Peter J. Spiro, Resurrecting Missouri v. Holland, 73 Mo. L.Rev. 1029 (2008). But if ever there were a statute that did test those limits, it would be Section 229. With its shockingly broad definitions, Section 229 federalizes purely local, run-of-the-mill criminal conduct. The statute is a troublesome example of the Federal Government’s appetite for criminal lawmaking.[2] Sweeping statutes like Section 229 are in deep tension with an important structural feature of our Government: “ ‘The States possess primary authority for defining and enforcing the criminal law.’ ” Brecht v. Abrahamson, 507 U.S. 619, 635, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting Engle v. Isaac, 456 U.S. 107, 128, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)); see also Patterson v. New York, 432 U.S. 197, 201, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (“It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government....”).
I hope that the Supreme Court will soon flesh out “[t]he most important sentence in the most important case about the constitutional law of foreign affairs,” Nicholas Quinn Rosenkranz, Executing The Treaty Power, 118 Harv. L.Rev. 1867, 1868 (2005), and, doing so, clarify (indeed curtail) the contours of federal power to enact laws that intrude on matters so local that no drafter of the Convention contemplated their inclusion in it.

. As I noted in our Court's previous opinion in this case, see United States v. Bond, 581 F.3d 128, 135 (3d Cir.2009), rev’d in part by, Bond v. United States, - U.S. -, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011), the scope and persuasiveness of Holland has generated much academic debate. See, e.g., Nicholas Quinn Rosenkranz, Executing The Treaty Power, 118 Harv. L.Rev. 1867 (2005); Edward T. Swaine, Does Federalism Constrain the Treaty *170 Power?, 103 Colum. L.Rev. 403 (2003); Curtis A. Bradley, The Treaty Power and American Federalism, 97 Mich. L.Rev. 390 (1998).

. ‘‘[T]he federal criminal code now includes at least 4,450 crimes. Congress added an average of 56.5 crimes per year to the federal code between 2000 and 2007 and has raised the total number of federal crimes by 40 percent since 1970. Moreover, the federal criminal code has grown not just in size but in complexity, making it difficult to both (1) determine what statutes constitute crimes and (2) differentiate whether a single statute with different acts listed within a section or subsection includes more than a single crime and, if so, how many.” John C. Eastman, The Outer Bounds of Criminal Law: Will Mrs. Bond Topple Missouri v. Holland?, 2011 Cato. Sup.Ct. Rev. 185, 193 (2011) (internal footnotes, quotation marks, and alterations omitted).