JAMES C. HO, Circuit Judge, concurring:
I agree with the National Labor Relations Board that the charter school operated by Voices for International Business and Education is subject to collective bargaining under the National Labor Relations Act.
Voices contends that its charter school is a "political subdivision" and thus exempt from the Act. But it seems obvious that charter schools are not "political subdivisions," but private organizations-owned and operated by private citizens, not political officials. Indeed, charter schools are appealing to many parents and students precisely because they are not political subdivisions. As the majority nicely puts it: "Private control was not a bug of [the Louisiana charter school law]; it was a reason for it." After all, one of the primary benefits of charter schools is the ability to harness private sector innovation and offer alternative educational opportunities unconstrained by politics. The parties seemed to acknowledge as much during oral argument. Oral Argument at 3:45-4:05 (appellant); 16:45-17:04 (appellee). Accordingly, I agree that the charter school operated by Voices is not a political subdivision, and I am pleased to join the majority opinion for that reason.
I nevertheless write separately to make clear that, although I agree with the Board's ultimate conclusion in this case, I disagree with its reasoning. For the Board does not merely argue that it is faithfully following Congress's directive. Rather, it asserts that we must defer to the Board's decision. See , e.g. , Br. of Appellee at 14 ("The Board's interpretation of the Act must be upheld if reasonably defensible. ... This deferential standard of review applies to every interpretation of the Act by the Board."); Oral Argument at 25:15-20 (claiming Board discretion to determine which entities are subject to the Act).
Charter schools are unambiguously private organizations, not political subdivisions. So I disagree with the Board's request for deference to the extent that it claims the power to reach the opposite result in another charter school case-for example, as the majority points out, the Board subjects Voices to collective bargaining, even as it attempts to exempt other charter schools from the Act. I therefore write separately to make clear that, by affirming the Board's decision today, I do not bless the Board's discretion to take the opposite view tomorrow. See , e.g. , Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs. , 545 U.S. 967, 982, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) ("A court's prior judicial construction of a statute trumps an agency construction ... if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").
Even in the age of Chevron , deference is not a blind commandment. Federal agencies *779 must enforce the law as written by Congress. I concur.
I.
The Board claims it has the discretion to decide who is and is not a political subdivision-and thus which workers may or may not engage in collective bargaining-and that this Court must defer to its determination. This is the natural implication of the Board's invocation of Chevron .
But under Chevron , we owe deference only to agency interpretations of ambiguous statutes. As Chevron sets forth, courts must generally construe ambiguity in statutory text as an implicit delegation of rulemaking authority to the agency. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc. , 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ; see also United States v. Mead Corp. , 533 U.S. 218, 229, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) ; Smiley v. Citibank (S. Dakota), N.A. , 517 U.S. 735, 742, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) ("[T]he whole point of Chevron is to leave the discretion provided by the ambiguities of a statute with the implementing agency."); D.R. Horton, Inc. v. NLRB , 737 F.3d 344, 356 (5th Cir. 2013) ("We give to the Board 'judicial deference when it interprets an ambiguous provision of a statute that it administers.' ") (quoting Lechmere, Inc. v. NLRB , 502 U.S. 527, 536, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992) ).
Absent statutory ambiguity, however, agencies do not have the authority to decide what the law shall be. So when an agency invokes Chevron deference where it does not belong (because the relevant statutory text is not ambiguous), it is not deferring to Congress's exercise of legislative authority, but rather doing exactly the opposite-here, claiming for itself the power to grant or deny collective bargaining rights at particular workplaces.
This is no hypothetical concern. In this case, the Board asserts that Louisiana charter schools are subject to collective bargaining, but that Texas charter schools are not. See generally LTTS Charter Sch., Inc. d/b/a Universal Acad. & Kimberly Free , 366 NLRB No. 38 (Mar. 15, 2018) ; Supplemental Authority of Appellees (Mar. 19, 2018) ("Appellee 28(j)"); Oral Argument at 27:10-28:04. The Board attempts to distinguish charter schools in Texas from those in Louisiana on the ground that "the Texas Education Code 'explicitly grants' the Texas Commissioner of Education broad authority to 'reconstitut[e]' the charter school's governing board by appointing new members or retaining current ones." Appellee 28(j) at 1-2 (citing LTTS , 366 NLRB No. 38, at 1 n.1 ). But even if this means that, under certain conditions, Texas has the power to transform a private, nonprofit charter school into a political subdivision at some point in the future, it is far from clear how that makes the charter school a political subdivision today. To use an analogy: The majority correctly points out that Texas could theoretically privatize its prison system someday in the future. But that does not mean Texas prisons are not part of state government today. The distinction that the Board seeks to draw finds no support in any statutory text set forth by Congress.
There is no ambiguity here. Charter schools that are privately opened and privately operated by privately chosen board members are unambiguously private entities, not political subdivisions. Accordingly, Congress has directed that those workplaces shall be subject to collective bargaining under the Act. Chevron affords the Board no authority to alter this determination. Under Chevron , only Congress has that power.
II.
Because the Board's claim of deference is wrong under Chevron , its demand for *780 judicial deference raises constitutional concerns as well.
Congress has the power to make laws, and courts have the power to interpret them. And the separation of these respective powers from one another, and from the Executive, is an essential principle of our Founding vision. See , e.g. , Bond v. United States , 564 U.S. 211, 222, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011) ("Separation-of-powers principles are intended, in part, to protect each branch of government from incursion by the others. Yet the dynamic between and among the branches is not the only object of the Constitution's concern. The structural principles secured by the separation of powers protect the individual as well.").
Indeed, it is the consolidation of legislative and judicial power in executive agencies that has caused Chevron to be called into question by various Justices. See , e.g. , Pereira v. Sessions , --- U.S. ----, 138 S.Ct. 2105, 2120-21, 201 L.Ed.2d 433 (2018) (Kennedy, J., concurring); Michigan v. E.P.A. , --- U.S. ----, 135 S.Ct. 2699, 2712-14, 192 L.Ed.2d 674 (2015) (Thomas, J., concurring); Gutierrez-Brizuela v. Lynch , 834 F.3d 1142, 1149-58 (10th Cir. 2016) (Gorsuch, J., concurring).
As Justice Alito has recently reminded, of course, Chevron remains binding Supreme Court precedent. See Pereira , 138 S.Ct. at 2129 (Alito, J., dissenting). But it nevertheless remains the duty of every court to apply Chevron correctly. Under Chevron , we do not owe every agency interpretation our "reflexive deference." Pereira , 138 S.Ct. at 2120 (Kennedy, J., concurring). Courts "need not resort to Chevron deference" when "Congress has supplied a clear and unambiguous answer to the interpretive question at hand." Id. at 2113 (opinion of the Court). And that is particularly so when we are considering the boundaries of agency authority, as we are here. See City of Arlington v. FCC , 569 U.S. 290, 307, 133 S.Ct. 1863, 185 L.Ed.2d 941 (2013) ("The fox-in-the-henhouse syndrome is to be avoided ... by taking seriously, and applying rigorously, in all cases, statutory limits on agencies' authority. Where Congress has established a clear line, the agency cannot go beyond it; and where Congress has established an ambiguous line, the agency can go no further than the ambiguity will fairly allow.").
Threshold questions like ambiguity under Chevron are not just perfunctory speedbumps. They are the means by which we are asked to apportion interpretive power between the judicial and executive branches, as well as legislative power between the legislative and executive branches. See Michigan , 135 S. Ct. at 2712 (Thomas, J., concurring) ("We most often describe Congress' supposed choice to leave matters to agency discretion as an allocation of interpretive authority. But we sometimes treat that discretion as though it were a form of legislative power.") (internal citations omitted).
Finding ambiguity where it does not exist-granting deference where it is not warranted-does not simply result in a nominal misallocation of power between different branches of government. It means that policymaking is no longer undertaken where it is most accountable to the people. And it means that government action is no longer undertaken in the manner that is most amenable to robust judicial review.
* * *
Our Founders did not separate power for its own sake, but to preserve liberty. Because the only way to preserve liberty is to constrain the exercise of power. So we separate power to limit power. By diffusing power across the three rival branches of government, we make it difficult for *781 government to gang up on the citizen. For the Founders well understood that " '[t]here can be no liberty where the legislative and executive powers are united in the same person, or body of magistrates,' or, 'if the power of judging be not separated from the legislative and executive powers.' " THE FEDERALIST NO. 47 (James Madison) (quoting Baron de Montesquieu).
Accordingly, the Constitution divides power among the three branches, and requires government to run the gauntlet in order to exercise the coercive power of the sovereign. First, lawmaking is located where it is most politically accountable, as it should be-in the hands of legislators elected by the people. Second, law enforcement is separated from lawmaking, to avoid mob rule-in a separate branch of government under the authority of executive officials accountable to the President. Third, we subject government action to review for legality by a judiciary that is independent of the other two branches.
Misuse of the Chevron doctrine means collapsing these three separated government functions into a single entity. So too with Chevron , to be sure. But the misuse of Chevron in this case abrogates separation of powers without even the fig leaf of Congressional authorization.
Under its vision, the Board exercises lawmaking power by deciding who shall and shall not be subject to collective bargaining. It exercises executive power by issuing orders requiring compliance by private parties. And it demands that the judiciary defer to its actions. In sum, the Board consolidates power into a single entity that is both unaccountable to the people via Congressional election and immune from robust judicial review. That is not how the Constitution is supposed to work-and when it comes to unambiguous laws, it is not how Chevron is supposed to work.
Congress has spoken clearly here. Charter schools are unambiguously private organizations, not political subdivisions. Accordingly, the Board's claim of deference fails to comply with Chevron , never mind the Constitution. Only Congress can make law. So if law is to be made or changed, it must be done as the Constitution commands-through Article I, Section 7, not Article II, Section 2. I concur.