NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1468
_____

FIREFIGHTER BRAD SPEAKMAN, Ret.; SENIOR FIREFIGHTER TERRANCE
TATE, Ret.;
LIEUTENANT JOHN CAWTHRAY; KELLI ANN STARR-LEACH, as Administratrix
of the Estate of Lieutenant Christopher M. Leach and as Guardian ad litem of
A.L. and M.L.; BRENDAN LEACH; LAURA FICKES, individually and as Executrix
of the Estate of Senior Firefighter Jerry W. Fickes, Jr.; BENJAMIN FICKES;
JOSHUA FICKES; SIMONE CUMMINGS, as Administratrix of the Estate of Senior
Firefighter Ardythe D. Hope; ARYELLE HOPE; ALEXIS LEE; ARDAVIA LEE,

Appellants

v.

DENNIS P. WILLIAMS, individually; JAMES M. BAKER, individually; ANTHONY S.
GOODE, individually; WILLIAM PATRICK, JR., individually; CITY OF
WILMINGTON, a municipal corporation
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-18-cv-01252)
Honorable Maryellen Noreika, United States District Judge
_____

Submitted under Third Circuit L.A.R. 34.1(a)
October 19, 2020

BEFORE:  GREENAWAY, JR., COWEN, and FUENTES, Circuit Judges

(Filed: January 6, 2021)

_____

OPINION[*]
_____

COWEN, <u>Circuit</u> <u>Judge</u>.

Plaintiffs appeal from the orders entered by the United States District Court for the District of Delaware granting the respective motions to dismiss for failure to state a claim filed by the various Defendants in this action. We will affirm.

II.

"This matter concerns the death of three Wilmington Fire Department ('WFD') firefighters and substantial injury to three other firefighters as a result of a house fire that occurred on September 24, 2016 in the City of Wilmington, DE." <u>Speakman v. Williams</u>, C.A. No. 18-1252-MN-MPT, 2019 WL 4058931, at *1 (D. Del. Aug. 28, 2019) (citing JA115), <u>R. & R. adopted as modified</u>, 2019 WL 471939 (D. Del. Sept. 30, 2019); 2020 WL 109073 (D. Del. Jan. 9, 2020); 440 F. Supp. 3d 376 (D. Del. 2020). The three injured firefighters—Firefighter Brad Speakman, Senior Firefighter Terrance Tate, and Lieutenant John Cawthray—as well as the estates and survivors of the three deceased firefighters—Lieutenant Christopher Leach, Senior Firefighter Jerry Fickes, and Senior Firefighter Ardythe Hope—filed an action under 42 U.S.C. § 1983 in the District Court. They named five defendants: (1) Dennis P. Williams (who served as Mayor of Wilmington from 2013 to 2017); (2) James M. Baker (Williams's predecessor, who was Mayor from 2001 to 2013); (3) Anthony S. Goode (WFD Chief of Fire from 2013 until

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

2017); (4) William Patrick, Jr. (Chief of Fire from 2007 until 2013); and (5) the City of Wilmington.[1]  Plaintiffs asserted a substantive due process "state-created danger" claim, a substantive due process "shocks the conscience" claim, and a substantive due process "maintenance of policies, practices and customs" claim.  "Plaintiffs allege the injuries sustained were proximately caused by the policies and actions of Defendants regarding 'rolling bypass' [as well as understaffing and misrepresentations concerning their policies and actions,[2]] which Plaintiffs contend violate their substantive due [process] rights guaranteed by the Fourteenth Amendment of the United States Constitution."  Id. (citing JA115).

Defendants filed separate motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  In a report and recommendation, the Magistrate Judge recommended that the motions to dismiss filed by Baker and Patrick be granted with prejudice on statute of limitations grounds and that the remaining three motions be granted in part and denied in part.  The Magistrate Judge addressed a number of different issues, including the elements of the "state-created danger" and "shocks the conscience" claims; the alleged maintenance of municipal policies, practices, and customs; the personal involvement requirement; the qualified immunity doctrine; the statute of limitations; the lack of standing on the part of the individual family members; and the political question doctrine.  In particular, she considered whether Plaintiffs'

---

[1] The former Wilmington officials were named only in their individual capacities.
[2] "'Rolling bypass' (also referred to as 'brownouts,' 'rolling brownouts,' and 'conditional company closures') is a policy where a fire truck is taken out of service for the rest of the shift if a certain number of vacancies on that shift require overtime to be fully staffed."  Speakman, 2019 WL 4058931, at *1 n.10.

3

allegations were sufficient to satisfy the "shocks the conscience" element of the "state-created danger" cause of action. Concluding that this element triggered a deliberate indifference standard given the absence of a hyper-pressurized environment, the Magistrate Judge believed that Plaintiffs' allegations were sufficient to meet the applicable standard (though she found that Plaintiffs had failed to state facts satisfying other elements of the "state-created danger" claim) With respect to the second count, the Magistrate Judge likewise indicated that "Plaintiffs adequately state facts which support conduct that shocks the conscience against Mayor Williams and Chief Goode." Id. at *9. However, in considering the political question doctrine, which Williams, Goode, and Patrick each asserted as a defense, she specifically addressed the Supreme Court's ruling in Collins v. City of Harker Heights, 503 U.S. 115 (1992). "In Collins, the [Supreme] Court found that the administration of government programs involve[s] policy choices to be made by locally elected representatives rather than 'by federal judges interpreting the basic charter of Government for the entire country.'" Speakman, 2019 WL 4058931, at *14 (alteration and ellipsis in original) (quoting Collins, 503 U.S. at 129). "This conclusion is followed by the Court's finding that the Due Process Clause is neither 'a guarantee against incorrect or ill-advised personnel decisions . . . [n]or does it guarantee municipal employees a workplace that is free of unreasonable risks of harm.'" Id. (quoting Collins, 503 U.S. at 129). In the end, the Magistrate Judge stated that the action could not be maintained against Williams because of the political question doctrine, while indicating that this doctrine did not apply to the claims against Patrick and Goode based on the limited facts before her.

Various objections were filed by the parties, and the District Court ultimately disposed of this matter in a series of orders granting the Defendants' motions and dismissing the claims against them without prejudice. In the process, it addressed the various issues considered by the Magistrate Judge (in particular, it concluded that the political question doctrine did not apply to substantive due process claims against a municipality and municipal officials). However, we focus on its last order and memorandum opinion specifically addressing the claims against Williams, Goode, and the City of Wilmington.

The District Court determined that, under Collins and subsequent case law addressing substantive due process claims arising out of the public employment context, Plaintiffs had failed to allege the deprivation of a constitutional right. It stated that, "[i]n the Third Circuit, a government employee may, despite Collins, bring a substantive due process claim against his employer 'if the [municipality] compelled the employee to be exposed to a risk of harm not inherent in the workplace.'" Speakman v. Williams, 440 F. Supp. 3d 376, 384 (D. Del. 2020) (alteration in original) (quoting Kedra v. Schroeter, 876 F.3d 424, 436 n.6 (3d Cir. 2017)). According to the District Court, "[s]uch behavior is 'conscience shocking' and claims based on such behavior are outside the scope of those prohibited by Collins." Id. (citing Kaucher v. Cnty. of Bucks, 455 F.3d 418, 427-31 (3d Cir. 2006)). The District Court explained that the alleged risk faced by the firefighters, even if it may have been increased by the conduct of Defendants, was still inherent in their employment as firefighters because the increase was not so severe that the employees would almost certainly suffer immediate injury or death. The District Court

5

also opined that the failure to abide by legislative mandates or standards of practice did not alter this outcome. It further indicated that there was no suggestion that the firefighters were compelled (either by threats of job loss or otherwise) to be exposed to such risks.

Although given an opportunity to file an amended complaint, Plaintiffs elected to stand on their complaint and filed a timely notice of appeal.

II.

Although the parties, the Magistrate Judge, and the District Court have raised a number of issues regarding the claims alleged in this case, we dispose of this appeal on the grounds that Plaintiffs failed to allege the deprivation of a constitutional right.[3] See, e.g., Kaucher, 455 F.3d at 423.

As the District Court recognized, "the Supreme Court has 'always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this [uncharted] area are scarce and open-ended.'" Speakman, 440 F. Supp. 3d at 382 (quoting Collins, 503 U.S. at 125). In Collins, the Supreme Court relied on this reluctance to decide that the Due Process Clause does not provide "a remedy for a municipal employee who is fatally injured in the course of his employment because the

---

[3] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and we have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's dismissal under Rule 12(b)(6). See, e.g., Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 n.2 (3d Cir. 2016). A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. at 786 (internal quotation marks and citation omitted). We may affirm on any ground supported by the record. See, e.g., Watters v. Bd. of Sch. Dirs., 975 F.3d 406, 412 (3d Cir. 2020).

6

city customarily failed to train or warn its employees about known hazards in the workplace." Collins, 503 U.S. at 117. "Neither the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." Id. at 126. Addressing the plaintiff's deliberate indifference theory, the Collins Court was unpersuaded that "the city's alleged failure to train its employees, or to warn them about known risks of harm, was an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Id. at 128 (also explaining that Due Process Clause should not be interpreted to impose federal duties analogous to those imposed by state tort law and that such reasoning applies with special force to claims asserted against public employers because state law generally governs substance of employment relationship). "Decisions concerning the allocation of resources to individual programs . . . and to particular aspects of those programs . . . involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country." Id. at 128-29.

Applying Collins, we have concluded that, while the Due Process Clause does not guarantee public employees certain minimal levels of safety and security, "a government employee may bring a substantive due process claim against his employer if the state compelled the employee to be exposed to a risk of harm not inherent in the workplace." Kedra, 876 F.3d at 436 n.6 (citing Kaucher, 455 F.3d at 430-31; Eddy v. V.I. Water & Power Auth., 256 F.3d 204, 212-13 (3d Cir. 2001)). We agree with the District Court

7

that the risk of injury or death is inherent to a firefighter's job and that any increase in risk on account of either the "rolling bypass" policy, the alleged understaffing, or any other alleged misconduct on the part of Defendants did not alter the fundamental nature of this inherent risk. See, e.g., Estate of Phillips v. D.C., 455 F.3d 397, 407 (D.C. Cir. 2006) ("[The Fire Chief's] deliberate indifference may have increased the Firefighters' exposure to risk, but the risk itself—injury or death suffered in a fire—is inherent in their profession."). As the District Court indicated, this case more closely resembles the circumstances at issue in Kaucher (where we rejected the employee's substantive due process claims) than either Kedra or Eddy (which permitted such claims).[4]

---

[4] "In [Eddy], the plaintiff was electrocuted after being ordered, without proper training, equipment, or protective clothing, to fix a high voltage electrical wire," and "[w]e concluded the defendants knew the plaintiff 'would face a risk of almost certain injury if he performed the work.'" Kaucher, 455 F.3d at 430 (quoting Eddy, 256 F.3d at 211 n.5). Similarly, Kedra involved "a mandatory firearms training [session] in which the trainees were required to be physically present without protection and the firearms instructor, instead of following safety protocols and demonstrating the proper use of a firearm, disregarded all protocols and fired directly at a trainee at close range." Kedra, 876 F.3d at 436 n.6. In contrast, a corrections officer's risk of contracting an infection (like a firefighter's risk of dying or suffering a serious injury in the line of duty) "was a 'risk incident to [his] service as an employee' at the jail, of which Kaucher was on notice from the outset of his employment." Kaucher, 455 F.3d at 431 (alteration in original) (quoting Hawkins v. Holloway, 316 F.3d 777, 787 (8th Cir. 2003)). We further note that, like Kaucher, the injured and deceased firefighters were not specifically threatened with discharge unless they exposed themselves to the alleged risks. See, e.g., id. at 430-31 (noting that, while Eddy was threatened with discharge if he refused to perform the task, there was no allegation that Kaucher was threatened with discharge if he failed to confront a particular danger at the jail). While Plaintiffs assert that the WFD is a "paramilitary" organization in which they were compelled to go where ordered, they cite no case law in support of a "paramilitary" distinction (and there would not appear to be much difference between a prison guard and a firefighter with respect to the nature of their employment).

8

Plaintiffs particularly emphasize the "separation of powers" in the structure of Wilmington's city government. They claim that this novel case presents the question of "what happens when the executive branch refuses to execute and abide by statutory resource allocation and workplace safety decisions already made, fully-funded and duly enacted into law by the legislative branch." (Appellants' Brief at 32; see also, e.g., Appellants' Reply Brief at 1 ("Stated another way, what happens when the usual separation of powers and federalism objections to finding government misconduct to be constitutionally arbitrary melt away and, instead, those same foundational principles move to the other side of the scale and weigh against those same defendants in the same substantive due process analysis?" (citing Appellants' Brief at 31-32)).)

We acknowledge that the separation of legislative, executive, and judicial powers has played a critical role in our history and in how Americans have sought to protect individual liberty. However, Plaintiffs are attempting to rely on the separation of powers between the different branches of a local government chartered under state law in order to bring a federal court action asserting substantive due process claims under the Fourteenth Amendment of the United States Constitution. See Carfer v. Caldwell, 200 U.S. 293, 297 (1906) (concluding that alleged violation of "separation of powers" provision of state

---

Plaintiffs further suggest that the alleged misconduct at issue here rose to the level of malicious and intentional conduct. However, even though Goode allegedly made a number of especially callous and reprehensible comments (e.g. "I don't care if you die in a fire" (JA152)), the complaint did not plausibly allege that Goode (or any of the other Defendants) acted "with the purpose of killing one or more of his subordinates because he wants to send a message to and retaliate against their Union for exposing his improper actions to the bright light of public scrutiny" (Appellants' Reply Brief at 13 (citing Appellants' Brief at 12-14)).

9

constitution did not present question under Due Process Clause of Fourteenth Amendment).  At the very least, Plaintiffs do not identify any cases allowing these types of claims, and they certainly do not cite any case law distinguishing Collins and decisions applying Collins based on the alleged refusal of the public employer's executive officials to execute funding decisions and directives adopted by the employer's legislative body. Plaintiffs cite the Supreme Court's ruling in Bond v. United States, 564 U.S. 211 (2011), but this case held that "a person indicted for violating a federal statute has standing to challenge its validity on grounds that, by enacting it, Congress exceeded its powers under the Constitution, thus intruding upon the sovereignty and authority of the States," id. at 214.  In fact, the Bond Court emphasized that federalism (like separation of powers) protects individual liberty, see id. at 220-24, and principles of federalism weigh against federal judges "interpreting the basic charter of Government for the entire country" to decide claims by public employees against their employers, Collins, 503 U.S. at 129.[5]

III.

Like the District Court, we recognize that this case "involves a tragedy," and we express no opinion as to whether Plaintiffs may have any remedies under Delaware law. Speakman, 440 F. Supp. 3d at 388.  However, because Plaintiffs did not allege a

---

[5] The Collins Court rejected "petitioner's suggestion that the Texas Hazard Communication Act supports her substantive due process claim."  Collins, 503 U.S. at 129 (footnote omitted).  While Plaintiffs engage in a rather abstruse discussion of the differences between the horizontal separation of powers of a single "sovereign" and conflicts between different "sovereigns" (i.e., the City of Wilmington and the State of Delaware), we do not see how a state statute could be accorded less weight than an ordinance adopted by the legislative body of an entity organized under the laws of the state itself.

10

cognizable claim under the Due Process Clause of the Fourteenth Amendment, we will affirm the orders of the District Court.