**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| CLUB ONE CASINO, INC., DBA Club One Casino; GLCR, INC., DBA The Deuce Lounge and Casino, *Plaintiffs-Appellants*, | No. 18-16696 |
| | D.C. No. 1:16-cv-01908-AWI-EPG |
| v. | |
| DAVID BERNHARDT; MIKE BLACK, Acting Assistant Secretary of the Interior - Indian Affairs; U.S. DEPARTMENT OF THE INTERIOR, *Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted February 11, 2020
San Francisco, California

Filed May 27, 2020

Before:  R. Guy Cole, Jr.,[*] Ronald M. Gould, and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Murguia

---

[*] The Honorable R. Guy Cole, Jr., Chief Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Tribal Gaming

The panel affirmed the district court's summary judgment in favor of the U.S. Department of the Interior and its Secretary in an action brought by plaintiff cardrooms, challenging the Secretary's approval of a Nevada-style casino project on off-reservation land in the County of Madera, California by the North Fork Rancheria of Mono Indians, a federally recognized tribe.

Section 3719 of Indian Gaming Regulatory Act ("IGRA") prohibits gaming on any lands acquired by the Secretary in trust for the benefits of Indian Tribes after October 17, 1988, unless one of several exceptions applies. As relevant here, Class III games include casino-style games, slot machines, and lotteries, and can only be conducted pursuant to tribal-state compacts approved by the Secretary. Section 5108 of the Indian Reorganization Act of 1934 ("IRA") authorized the Secretary to acquire interests or rights for the purpose of providing land for Indians. In July 2016, in accordance with IGRA, the Secretary prescribed certain procedures that permitted gaming on the Madera Parcel (the "Secretarial Procedures").

The panel rejected plaintiffs' contention that the Secretarial Procedures were issued in violation of IGRA. The panel held that as a matter of law, the federal government confers tribal jurisdiction over lands it acquires in trust for the benefit of tribes. The panel further held that

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the Tribe's jurisdiction over the Madera Parcel operated as a matter of law and the Tribe clearly exercised governmental power when it entered into agreements with local governments and enacted ordinances concerning the property. Finally, the panel rejected plaintiffs' claim that the Tribe's acquisition of any jurisdiction over the Madera Parcel required the State's consent or cession. Specifically, the panel held that the Enclave Clause of the U.S. Constitution did not apply because the Secretary's acquisition of land in trust for the benefit of a tribe did not result in the creation of a federal enclave or violate the Clause. The panel also held that 40 U.S.C. § 3112 did not apply where the jurisdiction at issue here – which was created by operation of law – was not granted by the State to the federal government, or taken by the federal government from the State.

The panel rejected plaintiffs' contention that to the extent IRA created tribal jurisdiction upon the Secretary's acquisition of land in trust for the benefit of the Tribe, it violated the Tenth Amendment. The panel held that the IRA did not offend the Tenth Amendment because Congress has plenary authority to regulate Indian affairs.

The panel held that plaintiffs waived two arguments raised for the first time on appeal.

The panel concluded that the Secretary's actions were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

**COUNSEL**

Robert D. Links (argued), Adam G. Slote, and Marglyn E. Paseka, Slote Links & Boreman LLP, San Francisco, California; Robert A. Olson and Timothy T. Coates, Greines Martin Stein & Richland LLP, Los Angeles, California; for Plaintiffs-Appellants.

Tamara Rountree (argued), John David Gunter II, Steven Miskinis, and Joann Kintz, Attorneys; Eric Grant, Deputy Assistant Attorney General; Jeffrey Bossert Clark, Assistant Attorney General; Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

**OPINION**

MURGUIA, Circuit Judge:

This action is one in a series of actions[1] concerning the proposed construction and operation of a Nevada-style casino on off-reservation land in the County of Madera, California (the "Madera Parcel") by the North Fork Rancheria of Mono Indians (the "North Fork" or "Tribe"), a federally recognized tribe. Plaintiffs-Appellants, Club One Casino and the Deuce Lounge, are cardrooms licensed by the State of California (the "State"). Plaintiffs contend that the approval of the casino project by the United States Secretary of the Interior (the "Secretary") and the United States

---

[1] *See Picayune Rancheria of Chukchansi Indians v. United States Dep't of Interior*, No. 1:16-CV-0950-AWI-EPG, 2017 WL 3581735, at *3–5 (E.D. Cal. Aug. 18, 2017) (reviewing actions related to the proposed casino).

Department of the Interior (collectively, Defendants-Appellees) is unlawful, and they brought a host of procedural, statutory, and constitutional challenges. The district court granted summary judgment against Plaintiffs on all claims. We affirm.

# I

The North Fork Rancheria of Mono Indians of California are the modern descendants of the Mono Indians, who have used and occupied lands in and near California's San Joaquin Valley for several centuries. The Tribe has approximately 1,750 citizens, is headquartered in North Fork, Madera County, California, and has been federally recognized since 1915.

In March 2005, the North Fork applied to the Department of the Interior to have a 305-acre plot of land in Madera County taken into trust by the United States pursuant to section 5108 of the Indian Reorganization Act ("IRA"), 25 U.S.C. §§ 5101–5144. The Tribe proposes to construct a casino resort on the property.

In September 2011, the Secretary made a determination pursuant to section 2719 of the Indian Gaming Regulatory Act ("IGRA"), *id.* §§ 2701–2721, finding that gaming on the land would be in the best interest of the North Fork and not detrimental to the surrounding community (the "Secretarial Determination"). In August 2012, the Governor of the State of California (the "Governor") informed the Secretary that he concurred in the Secretarial Determination and negotiated a compact with the North Fork to govern gaming at the Madera Parcel. In February 2013, the Madera Parcel was acquired in trust by the Secretary for the benefit of the North Fork. In June 2013, the California Legislature passed Assembly Bill 277, which ratified the compact, and the

Governor signed the legislation into law the following month. Enough signatures, however, were gathered to place a veto referendum ("Proposition 48") on the November 2014 ballot, which proposed voiding the California Legislature's ratification of the compact. Proposition 48 passed with sixty-one percent of the vote—meaning that Assembly Bill 277, which had ratified the compact between the Tribe and the State, was vetoed by the voters.

After this defeat at the polls, the North Fork requested that the State negotiate a new tribal-state compact to govern gaming at the Madera Parcel. The State refused, citing Proposition 48's passage. In March 2015, the Tribe brought an action under IGRA, alleging that the State failed to negotiate in good faith. *N. Fork Rancheria of Mono Indians of Cal. v. California*, No. 1:15-CV-00419-AWI-SAB, 2015 WL 11438206, at *1 (E.D. Cal. Nov. 13, 2015). The district court agreed, finding that the State's refusal to negotiate a compact post-referendum violated IGRA, and ordered the State and the North Fork to conclude a compact within sixty days. *Id.* at *8, *12. When the parties failed to do so, the court selected a mediator and directed the parties to submit their last best offers. The parties complied with the order and the mediator selected the North Fork's proposed compact as "the compact that best comported with IGRA, Federal law, and the orders of this Court." The mediator thereafter submitted the compact to the State for its consent. The State did not consent to the selected compact within the statutorily required time period and the mediator's proposed compact was submitted to the Secretary pursuant to section 2710(d)(7)(B)(vii) of IGRA.

In July 2016, in accordance with IGRA, the Secretary prescribed certain procedures that permitted gaming on the Madera Parcel (the "Secretarial Procedures"). The

Secretarial Procedures do not include express findings as to whether the North Fork had jurisdiction or exercised governmental power over the Madera Parcel or whether the Madera Parcel was Indian land.

Plaintiffs, the cardrooms, sued the Secretary and the Department of the Interior in the district court in December 2016. They challenged the Secretary's issuance of the Secretarial Procedures under the Administrative Procedure Act, claiming: (1) the Secretarial Procedures were issued in violation of IGRA, as the Tribe purportedly never acquired jurisdiction or exercised governmental power over the Madera Parcel; and (2) assuming the Tribe acquired jurisdiction and exercised governmental power, IRA violates the Tenth Amendment to the Constitution by reducing the State's jurisdiction over land within its territory without its agreement.

On cross-motions for summary judgment, the district court denied Plaintiffs' motion and granted Defendants' motion. In accordance with case law from other circuits, the district court held that: (1) the Tribe had jurisdiction over the Madera Parcel for purposes of IGRA by virtue of the land being acquired in trust for the Tribe and neither consent nor cession by the State was required; (2) Plaintiffs' Tenth Amendment challenge was not properly before the court, as Plaintiffs had only challenged the issuance of the Secretarial Procedures, not the Secretary's acquisition of the Madera Parcel in trust for the benefit of the Tribe; and (3) alternatively, Plaintiffs lacked standing to bring the Tenth Amendment challenge. Plaintiffs timely appealed.

## II

We review the district court's grant of summary judgment *de novo* to determine whether the Secretary's

actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Alaska Oil & Gas Ass'n v. Jewell*, 815 F.3d 544, 554 (9th Cir. 2016). We have described the arbitrary and capricious standard as deferential and narrow, establishing a "high threshold" for setting aside agency action. *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1067, 1070 (9th Cir. 2010) (per curiam). We also review purely legal questions *de novo*. *Wagner v. Nat'l Transp. Safety Bd.*, 86 F.3d 928, 930 (9th Cir. 1996).

## III

Before proceeding to our analysis, we pause to set out the applicable statutory landscape. Gaming in Indian country is a multi-billion-dollar industry conducted pursuant to the Indian Gaming Regulatory Act of 1988. IGRA "accommodate[s] the interests of tribes in pursuing gaming but also set[s] forth a federal regulatory regime, and g[ives] a powerful role to states by providing for significant state involvement in the decision to permit casino-style gaming." Cohen's Handbook of Federal Indian Law § 12.01, at 876 (2012) ("Federal Indian Law").

Gaming is permitted only on Indian lands, which are defined as "all lands within the limits of any Indian reservation," 25 U.S.C. § 2703(4)(A), *and* "any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power," *id.* § 2703(4)(B). Thus, a tribe may engage in gaming activities either: (1) on a reservation; or (2) off a reservation on tribal or individual trust land, or land not held in trust but subject to a restriction on alienation, but

only if a tribe exercises governmental power over this trust or restricted land. *Id.* § 2703(4).

Importantly, section 2719 of IGRA prohibits gaming on any lands acquired by the Secretary in trust for the benefit of Indian tribes after October 17, 1988, unless one of several exceptions applies. An exception pertinent to this appeal permits gaming if the Secretary makes a two-part determination: (1) finding that gaming on land acquired in trust after 1988 "would be in the best interest of the Indian tribe and its members"; and (2) that such gaming "would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination." *Id.* § 2719(b)(1)(A).

Additionally, IGRA divides gaming into three classes. As relevant here, Class III[2] games include casino-style games, slot machines, and lotteries. *See id.* § 2703(8). Generally, Class III games can only be conducted pursuant to tribal-state compacts approved by the Secretary. *Id.* § 2710(d)(1)(C), (3)(B). *If* a state generally permits such gaming, IGRA authorizes a tribe to bring an action in federal court[3] against a state that refuses to enter into negotiations at

---

[2] Class I games include social and traditional games for prizes of minimal value. Federal Indian Law § 12.02, at 881–82. Class I gaming is within the sole jurisdiction of tribes. *Id.* Class II games include bingo, bingo-like games, and certain non-banking (meaning, players compete against each other and not the "house") card games. *Id.* Class II gaming is jointly regulated by tribes and the National Indian Gaming Commission, excluding a role for states. *Id.*

[3] As a result of the Supreme Court's ruling in *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996), states may assert Eleventh Amendment immunity from tribal lawsuits alleging failure to negotiate in good

all or has refused to negotiate a Class III tribal-state compact in good faith. *Id.* § 2710(d)(7)(A)(i), (B)(i). If there is a finding by a district court that the state failed to negotiate in good faith, IGRA requires the district court to order the tribe and the state to negotiate a compact within sixty days. *Id.* § 2710(d)(7)(B)(iii). If a compact fails to materialize within sixty days, the district court shall appoint a mediator who will require the tribe and the state to submit their best and final proposal for a compact. *Id.* § 2710(d)(7)(B)(iv). The mediator then selects the compact that best comports with policies embodied in IGRA and other applicable federal laws. *Id.* If the state still refuses to agree to be bound by the chosen compact, IGRA requires the mediator to refer the matter to the Secretary, who must then issue gaming procedures consistent with the compact selected by the mediator, other relevant provisions of IGRA, and the laws of the state. *Id.* § 2710(d)(7)(B)(vii).

In addition to IGRA, this appeal implicates the Indian Reorganization Act of 1934. IRA authorizes the Secretary "in his discretion" to acquire "any interest in lands, water rights, or surface rights to lands, within or without existing reservations," through purchase, gift, or exchange "for the purpose of providing land for Indians." *Id.* § 5108 (formerly § 465). IRA reflected a major shift in federal policy from one favoring diminishment of tribal lands to one protecting tribal lands and supporting tribal self-government and economic development. *See Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 152 (1973).

---

faith—meaning, tribes are prohibited from bringing lawsuits in federal court against a state without the consent of the state. California has waived its immunity and has thereby consented to such suits. *See* Cal. Gov't Code § 98005.

In sum, in order for a tribe to engage in *any* gaming on off-reservation land acquired after October 17, 1988, the following must take place: (1) land—which is either held in trust by the United States for the benefit of any Indian tribe or individual *or* held by any Indian tribe or individual subject to restriction by the United States against alienation, 25 U.S.C. § 2703(4)(B)—must be acquired; (2) the Secretary must make a determination finding that gaming would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, *id.* § 2719(b)(1)(A); and (3) the governor of the state must concur in the determination, *id.*

In order for a tribe to engage in *Class III* gaming, however, the Secretary must *also* either approve a tribal-state compact, *id.* § 2710(d)(1)(C), *or* prescribe secretarial procedures, if the state failed to negotiate in good faith, *id.* § 2710(d)(7)(B)(vii). As explained above, if a state refuses to negotiate a tribal-state compact in good faith or to enter into negotiations at all, IGRA authorizes the Secretary to permit gaming by issuing gaming procedures consistent with a compact selected by a mediator, other relevant provisions of IGRA, and the laws of the state.

## IV

On appeal, Plaintiffs re-assert the arguments they presented to the district court. Plaintiffs contend that: (1) the Secretarial Procedures were issued in violation of IGRA, as the Tribe purportedly never acquired jurisdiction or exercised governmental power over the Madera Parcel; and (2) assuming the Tribe acquired jurisdiction and exercised governmental power, IRA violates the Tenth Amendment by reducing the State's jurisdiction over land within its territory without its agreement. Plaintiffs also, however, introduce two additional arguments, which they

present for the first time on appeal: (1) that the Secretarial Determination finding that gaming at the Madera Parcel would be in the best interest of the North Fork and not detrimental to the surrounding community did not reflect sufficiently robust consultation, as required by law; and (2) that the Governor lacked authority to concur in the Secretarial Determination. We address the first two arguments below, and we conclude that the latter two have been waived.

## A

Plaintiffs contend that the Secretarial Procedures, which permit gaming on the Madera Parcel, were issued in violation of IGRA because the Tribe purportedly lacked jurisdiction and did not exercise governmental power over the Madera Parcel. In support of this argument Plaintiffs appear to claim that: (1) tribal jurisdiction was not automatically obtained by the Tribe when the United States acquired the Madera Parcel in trust for the benefit of the Tribe; (2) the Secretary was required, but failed, to consider whether the Tribe possessed jurisdiction and whether the Tribe exercised governmental power over the Madera Parcel; and (3) the Tribe's acquisition of any jurisdiction over the Madera Parcel requires the State's consent or cession—neither of which was granted. None of these arguments has merit.

## 1

As noted above, IRA authorizes the Secretary "in his discretion" to acquire "any interest in lands, water rights, or surface rights to lands, within or without existing Indian reservations," through purchase, gift, or exchange "for the purpose of providing land for Indians." *Id.* § 5108. And while there is no Ninth Circuit precedent precisely on point,

other circuits have logically concluded that, as a matter of law, the federal government confers tribal jurisdiction over lands it acquires in trust for the benefit of tribes.  We agree.

In *Upstate Citizens for Equality, Inc. v. United States*, for example, the Second Circuit concluded that "[l]and held by the federal government in trust for Indians under [section 5108 of IRA] 'is generally not subject to (1) state or local taxation; (2) local zoning and regulatory requirements; or, (3) state criminal and civil jurisdiction [over Indians], unless the tribe consents to such jurisdiction.'"  841 F.3d 556, 561 (2d Cir. 2016) (alteration in original) (quoting *Conn. ex rel. Blumenthal v. United States Dep't of Interior*, 228 F.3d 82, 85–86 (2d Cir. 2000)).  The court further noted that the federal government may, "by acquiring land for a tribe, divest a state of important aspects of its jurisdiction, even if a state previously exercised wholesale jurisdiction over the land and even if 'federal supervision over [a tribe] has not been continuous.'"  *Id.* at 568 (alteration in original) (quoting *United States v. John*, 437 U.S. 634, 653 (1978)).  Accordingly, "[w]hen the federal government takes land into trust for an Indian tribe, the state that previously exercised jurisdiction over the land cedes *some* of its authority to the federal and tribal governments."  *Id.* at 569 (emphasis added).[4]

Similarly, in *Yankton Sioux Tribe v. Podhradsky*, the Eighth Circuit concluded that "land held in trust under [IRA]

---

[4] Notably and importantly, federal and Indian authority do not entirely displace state authority over land taken into trust.  *Upstate Citizens for Equality*, 841 F.3d at 572.  For example, under Public Law 280, 18 U.S.C. § 1162(a), California retains "broad criminal jurisdiction over offenses committed by or against Indians within all Indian country within the State."  *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207 (1987), *superseded on other grounds by statute*.

is effectively removed from state jurisdiction," for "when Congress enacted [IRA] 'it doubtless intended and understood that the Indians for whom the land was acquired would be able to use the land free from state or local regulation or interference as well as free from taxation.'" 606 F.3d 994, 1011 (8th Cir. 2010) (quoting *Chase v. McMasters*, 573 F.2d 1011, 1018 (8th Cir. 1978)).

As a general matter, too, off-reservation trust land like the Madera Parcel is "Indian country" with all the jurisdictional consequences that attach to that status.[5] Federal law defines "Indian country," in part, as "all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state." 18 U.S.C. § 1151(b). Off-reservation trust land set aside for Indian use is Indian country under subsection (b) of the Indian country statute. Off-reservation trust land is, by definition, land set aside for Indian use and subject to federal control. Federal control over trust land is evident and made clear in regulations such as 25 C.F.R. § 1.4(a), which precludes state or local regulation of property "belonging to any Indian or Indian tribe, band, or community that is held in trust by the United States[.]" "Generally speaking, primary jurisdiction over land that is Indian country rests with the Federal Government and the Indian tribe inhabiting it, and not with the States." *Native Vill. of Venetie*, 522 U.S. at 527 n.1.

---

[5] "Although this definition by its terms relates only to federal criminal jurisdiction, we have recognized that it also generally applies to questions of civil jurisdiction . . . ." *Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 527 (1998).

As such, the federal government confers tribal jurisdiction over lands it acquires in trust for the benefit of tribes as a matter of law.

**2**

Plaintiffs' next contention, that the Secretary was somehow legally required to consider whether the Tribe possessed jurisdiction and exercised governmental power over the Madera Parcel, is equally unpersuasive. Plaintiffs do not point to any provision of IGRA—or any other relevant authority, for that matter—requiring the Secretary to make either determination. We decline to read into IGRA unnecessary requirements demanded neither by law nor logic. As to jurisdiction specifically, requiring the Secretary to evaluate whether the Tribe possesses jurisdiction over the land would be illogical. As noted above, the Tribe's jurisdiction over the Madera Parcel operates as a matter of law; it is not a question of fact. *Upstate Citizens for Equality*, 841 F.3d at 569 ("When the federal government takes land into trust for an Indian tribe, the state that previously exercised jurisdiction over the land cedes some of its authority to the federal and tribal governments.").

As to governance, the Tribe most certainly exercises governmental power over the Madera Parcel. IGRA authorizes gaming on "any lands title to which is . . . held in trust by the United States for the benefit of any Indian tribe . . . *and over which an Indian tribe exercises governmental power*." 25 U.S.C. § 2703(4)(B) (emphasis added). Although federal courts have not often had occasion to consider whether a tribe "exercises governmental power" within the meaning of IGRA, those that have considered the question have held that exercising governmental power requires a showing of both theoretical power to exercise jurisdiction over the property and proof of actual exercise of

that authority. For example, the First Circuit in *Rhode Island v. Narragansett Indian Tribe* held that "[m]eeting this requirement does not depend upon the Tribe's theoretical authority, but upon the presence of concrete manifestations of that authority." 19 F.3d 685, 703 (1st Cir. 1994).

In *Massachusetts v. Wampanoag Tribe of Gay Head*, the First Circuit similarly concluded that a tribe which had passed ordinances and entered into agreements with state and local governments for the provision of law enforcement and firefighting services exercised governmental power sufficiently within the meaning of IGRA. 853 F.3d 618, 625–26 (1st Cir. 2017). The court underscored that "the achievement of full-fledged self-governance" was not necessary—only "merely movement in that direction." *Id.* at 626.

Here, the record clearly indicates that in late 2006 the Tribe entered into "enforceable and binding" agreements with the County of Madera and the City of Madera for the provision of law enforcement and fire protection services at the Madera Parcel. The Tribe also enacted a gaming ordinance in 2009 "governing the conduct of gaming" at the Madera Parcel. The district court also took judicial notice of the fact that the Tribe enacted an ordinance in October 2015 approving a conservation plan for the Madera Parcel.

For these reasons, both conditions were met here. The Tribe's jurisdiction over the Madera Parcel operates as a matter of law and the Tribe clearly exercised governmental power when it entered into agreements with local governments and enacted ordinances concerning the property.

**3**

Plaintiffs' final claim in support of their argument that the Secretarial Procedures were issued in violation of IGRA—that the Tribe's acquisition of any jurisdiction over the Madera Parcel requires the State's consent or cession—is also unavailing. Plaintiffs point to the Constitution's Enclave Clause and a federal statute, 40 U.S.C. § 3112, as the sources of those requirements.[6]

The Enclave Clause does not apply here. The Secretary's acquisition of land in trust for the benefit of a tribe does not result in the creation of a federal enclave or violate the Enclave Clause. *See, e.g.*, *Upstate Citizens for Equality*, 841 F.3d at 571 ("When land is taken into trust by the federal government for Indian tribes, the federal government does not obtain such categorically exclusive jurisdiction over the entrusted lands."); *City of Roseville v. Norton*, 219 F. Supp. 2d 130, 151 (D.D.C. 2002) ("[I]t is clear that land taken into trust for Indians does not create an exclusive federal enclave. Consequently, the Enclaves [sic] Clause is not implicated[.]"). "State jurisdiction is . . . only

---

[6] In general, Congress may acquire jurisdiction *from* a state through two methods: consent and cession. The first method, consent, arises from the Constitution's Enclave Clause. Case law construing the clause instructs that state consent is needed only when the federal government takes "exclusive" jurisdiction over land within a state. *See, e.g.*, *Paul v. United States*, 371 U.S. 245, 263 (1963). "Exclusive" jurisdiction for Enclave Clause purposes is equivalent to the sweeping power that Congress exerts over the District of Columbia, the first subject of the clause. *Id.* The second method, cession, relates to 40 U.S.C. § 3112. Under this federal statute, the federal government can acquire jurisdiction from a state by filing a notice accepting the state's jurisdiction with the state's governor or in such manner as may be prescribed by the laws of the state where the lands are situated. 40 U.S.C. § 3112(b).

reduced, and not eliminated, when the federal government takes land into trust for a tribe.  Because federal and Indian authority do not wholly displace state authority over land taken into trust pursuant to § 5 of the IRA, the Enclave Clause poses no barrier to the entrustment that occurred here."  *Upstate Citizens for Equality*, 841 F.3d at 572.

Section 3112 also does not apply.  By its own terms, the statute sets forth requirements for the federal government's *acceptance* of jurisdiction over land.  *See, e.g.*, 40 U.S.C. § 3112(b) ("[The federal government] shall indicate acceptance of jurisdiction . . . by filing a notice of acceptance with the Governor of the State[.]")  Here, the federal government is not accepting jurisdiction "from the State."  In other words, the jurisdiction at issue here—which was created by operation of law, as noted above—was not granted by the State to the federal government, or taken by the federal government from the State.  *See, e.g.*, *Kleppe v. New Mexico*, 426 U.S. 529, 541–43 (1976) (noting the distinction between Congress' constitutional powers and its derivative legislative powers acquired from a state, and noting that where Congress acts pursuant to a non-derivative constitutional power, federal legislation preempts conflicting state law).  The federal government's power under IRA to acquire the Madera Parcel in trust for the benefit of the Tribe is derived from Congress' broad general power, pursuant to the Indian Commerce Clause, to legislate with respect to Indian tribes—power which has been consistently described as "plenary and exclusive" power over Indian affairs.  *United States v. Lara*, 541 U.S. 193, 200 (2004); *see also Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 192 (1989) ("[T]he central function of the Indian Commerce Clause is to provide Congress with plenary power to legislate in the field of Indian affairs[.]").  Therefore, when Congress so acts, the federal legislation

necessarily overrides conflicting state laws under the Supremacy Clause.  *See Kleppe*, 426 U.S. at 543.

Thus, Plaintiffs' claim that the Tribe's acquisition of any jurisdiction over the Madera Parcel requires the State's consent or cession fails.

**B**

Plaintiffs also contend that to the extent IRA creates tribal jurisdiction upon the Secretary's acquisition of land in trust for the benefit of the Tribe, it violates the Tenth Amendment.**[7]**  Plaintiffs assert that "tak[ing] sovereignty from a State without that State's consent or permission" violates the Tenth Amendment, as "[t]erritorial jurisdiction is a fundamental component of State sovereignty."

The authority to regulate Indian affairs is among the enumerated powers of the federal government.  U.S. Const. art. I, § 8, cl. 3; *Cotton Petroleum Corp.*, 490 U.S. at 192; *Morton v. Mancari*, 417 U.S. 535, 551 (1974) (noting that Congress has plenary power "to deal with the special problems of Indians," including the power to legislate on their behalf).  "With the adoption of the Constitution, Indian relations became the exclusive province of federal law." *Cty. of Oneida v. Oneida Indian Nation of New York*, 470 U.S. 226, 234 (1985); *see also United States v. Forty-Three Gallons of Whiskey*, 93 U.S. 188, 194 (1876) ("Congress now has the exclusive and absolute power to regulate commerce with the Indian tribes[.]").

---

**[7]** Plaintiffs have standing to bring this claim pursuant to *Bond v. United States*, 564 U.S. 211, 220–21 (2011).

The Tenth Amendment to the Constitution reserves to the states those powers not expressly delegated to the federal government. The powers delegated to the federal government and those reserved to the states by the Tenth Amendment are mutually exclusive. "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States[.]" *New York v. United States*, 505 U.S. 144, 156 (1992).

Because Congress has plenary authority to regulate Indian affairs, contrary to Plaintiffs' argument, IRA does not offend the Tenth Amendment. *See, e.g.*, *Carcieri v. Kempthorne*, 497 F.3d 15, 39–40 (1st Cir. 2007) (en banc) (emphasizing that powers expressly delegated to Congress do not implicate the Tenth Amendment), *rev'd on other grounds sub nom. Carcieri v. Salazar*, 555 U.S. 379 (2009); *see also Gila River Indian Cmty. v. United States*, 729 F.3d 1139, 1154 (9th Cir. 2013), *as amended* (July 9, 2013) (holding that a federal statute "was well within congressional power under the Indian Commerce Clause and is not trumped by the Tenth Amendment").

## C

Plaintiffs also raise two arguments for the first time on appeal. First, Plaintiffs claim the Secretarial Determination that gaming would be in the best interest of the Tribe and would not be detrimental to the surrounding community did not reflect sufficiently robust consultation with "appropriate State and local officials" pursuant to section 2719(b)(1)(A) of IGRA because some local authorities opposed the Tribe's request for gaming on off-reservation lands. Second, Plaintiffs claim that the Governor's 2012 concurrence in the Secretarial Determination was unauthorized as a matter of

state law[8] and, alternatively, was revoked before the issuance of the Secretarial Procedures.  Neither of these arguments were presented to the district court.

"Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so." *El Paso City v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.)*, 217 F.3d 1161, 1165 (9th Cir. 2000).  Plaintiffs have failed to address any of the exceptions to the general rule that an argument raised for the first time on appeal is waived.  *See United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir. 1990) (discussing the limited circumstances where the Court may consider an issue raised for the first time on appeal, which include when there are "exceptional circumstances" why the issue was not raised in the trial court, when the new issue arose while the appeal was pending because of a change in the law, and when the issue presented is purely one of law and the opposing party will not suffer prejudice as a result of the failure to raise the issue in the trial court).

Accordingly, Plaintiffs have waived these arguments.

---

[8] The California Supreme Court has granted review of two related cases involving the following legal question:  "May the Governor concur in a decision by the Secretary of the Interior to take off-reservation land in trust for purposes of tribal gaming without legislative authorization or ratification, or does such an action violate the separation of powers provisions of the state Constitution?"  *United Auburn Indian Cmty. of the Auburn Rancheria v. Brown*, No. S238544 (review granted Jan. 25, 2017); *Stand Up for California! v. State*, No. S239630 (review granted Mar. 22, 2017) (briefing deferred pending decision in *United Auburn*).

## V

In summary, the Tribe's jurisdiction over the Madera Parcel operates as a matter of law and the Tribe clearly exercised governmental power when it entered into agreements with local governments and enacted ordinances concerning the property. Because neither the Enclave Clause nor 40 U.S.C. § 3112 are implicated here, neither the State's consent nor cession is required for the Tribe to acquire any jurisdiction over the Madera Parcel. Finally, IRA does not offend the Tenth Amendment because Congress has plenary authority to regulate Indian affairs. As such, we conclude that the Secretary's actions were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Alaska Oil & Gas*, 815 F.3d at 554.

**AFFIRMED.**