State *v.* Bradley

## STATE OF CONNECTICUT *v.* WILLIAM HYDE BRADLEY
### (SC 20450)

Robinson, C. J., and McDonald, D'Auria,
Kahn and Ecker, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the Appellate
Court, which affirmed the trial court's judgments following his condi-
tional pleas of nolo contendere to the charges of sale of a controlled
substance and violation of probation. The charges stemmed from the
discovery by probation officers of marijuana in the defendant's posses-
sion while they were conducting a visit at his home. The defendant had
filed motions to dismiss, claiming that the legislature's enactment of
the statute ((Rev. to 2017) § 21a-277 (b)) criminalizing the sale of, inter
alia, marijuana was based on a racially discriminatory motive and, there-
fore, violated his rights under the federal constitution. Following a hear-
ing on the defendant's motions, the trial court concluded that, although
the defendant, a Caucasian, was not a member of a minority group that
§ 21a-277 (b) allegedly discriminated against, he had standing to pursue
his challenge in his individual capacity because he was aggrieved by
the application of an unconstitutional law. The trial court nevertheless
denied the defendant's motions to dismiss on the merits. Subsequently,
the defendant appealed to the Appellate Court from the trial court's
judgments, claiming that the trial court had improperly denied his
motions to dismiss. The Appellate Court affirmed the trial court's judg-
ments on the alternative ground that the defendant lacked standing to
assert his constitutional claim, and the defendant, on the granting of
certification, appealed to this court. On appeal, the defendant claimed

whether, *under the facts of that case*, the defendant had "fled" the state
within the meaning of § 54-193 (c) such as to trigger the tolling provision.
See, e.g., *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 756,
900 A.2d 1 (2006) (in construing a statute, "we seek to determine . . . the
meaning of the statutory language *as applied to the facts of [the] case,
including the question of whether the language actually does apply*"
(emphasis added; internal quotation marks omitted). We were not required
to determine whether a person who signed a sworn confession and then
two years later relocated outside of the state, after fully cooperating with
the police and providing them with a valid cell phone number at which he
could be reached, and who took no evasive actions to avoid detection, also
could be deemed to have fled the state within the meaning of the statute.
To the extent that the state reads *Ward* as having resolved that question,
it is quite mistaken.

State *v.* Bradley

that he had standing, in his individual capacity, to raise a due process challenge to his conviction under § 21a-277 (b) because that statute violated the equal protection clause of the United States constitution insofar as it was enacted for the purpose of discriminating against African Americans and Mexican Americans. *Held* that the defendant lacked standing to assert his claim that § 21a-277 (b) violated the equal protection rights of African Americans and Mexican Americans, as the defendant, a Caucasian, was not aggrieved by the legislature's enactment of a law that allegedly discriminated against other racial and ethnic groups: the defendant failed to demonstrate a specific, personal and legal interest, rather than a general interest shared by the community, in the underlying equal protection challenge to Connecticut's criminalization of the sale of marijuana, as the defendant did not claim that he was a member of the group of racial or ethnic minorities that § 21a-277 (b) was allegedly enacted to discriminate against; moreover, the defendant's reliance on this court's decision in *State* v. *Long* (268 Conn. 508) and on Justice Ruth Bader Ginsburg's concurrence in *Bond* v. *United States* (564 U.S. 211) was misplaced, as the analysis in *Long* was confined to the second prong of the two-pronged inquiry for determining classical aggrievement, whereas this case turned on whether the defendant satisfied the first prong of that inquiry, and as Justice Ginsburg's concurrence was not controlling precedent and was based on federal third-party standing doctrine that was inapplicable to the defendant because he did not assert standing in a representative capacity.

(*One justice dissenting*)

Argued March 26—officially released October 5, 2021*

*Procedural History*

Information, in the first case, charging the defendant with the crimes of possession of one-half ounce or more of a cannabis-type substance within 1500 feet of a school and sale of a controlled substance, and information, in the second case, charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Middlesex, where the court, *Keegan, J.*, denied the defendant's motions to dismiss; thereafter, the defendant was presented to the court on conditional pleas of nolo contendere to the charges of sale of a controlled substance and violation of probation; judgments in accordance with the pleas; subse-

---

* October 5, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

State *v.* Bradley

quently, the state entered a nolle prosequi on the charge of possession of one-half ounce or more of a cannabis-type substance within 1500 feet of a school, and the defendant filed separate appeals with the Appellate Court, which consolidated the appeals; thereafter, the Appellate Court, *DiPentima*, *C. J.*, and *Keller* and *Sheldon*, *Js.*, affirmed the trial court's judgments, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Naomi T. Fetterman*, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Michael A. Gailor*, state's attorney, and *Russell Zentner*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. Today we are called on to decide whether a defendant has standing to assert a violation of his right to due process based on his conviction under a statute that he claims is unconstitutional. The twist in that otherwise straightforward question is that the defendant, who is Caucasian, claims that Connecticut's statute criminalizing the sale of marijuana violates the equal protection clause of the United States constitution because it was enacted to discriminate against African Americans[1] and Mexican Americans.

The defendant, William Hyde Bradley, appeals from the judgment of the Appellate Court affirming the trial court's judgments following his conditional pleas of nolo contendere to charges of sale of a controlled substance and violation of probation. The defendant's prin-

---

[1] We recognize that the term "African American" is restrictive in that it does not necessarily encompass the entire Black population in America. Nevertheless, to remain consistent with the parties' briefs, the Appellate Court opinion, and the certified issues before this court, we use the term "African American" throughout this opinion.

State *v.* Bradley

cipal claim on appeal is that the Appellate Court incorrectly concluded that he lacked standing to argue that his conviction for sale of a controlled substance in violation of General Statutes (Rev. to 2017) § 21a-277 (b)[2] violated his due process rights because he was convicted under an unconstitutional statute. Specifically, he contends that the Appellate Court erroneously held that a defendant cannot bring a constitutional challenge, in his individual capacity, based on an alleged violation of others' equal protection rights. Because the defendant cannot meet the requirements to establish classical aggrievement, we affirm the judgment of the Appellate Court. Accordingly, we do not reach the merits of the defendant's equal protection claim in this appeal.

The Appellate Court's decision sets forth the facts and procedural history; see *State* v. *Bradley*, 195 Conn. App. 36, 38–41, 223 A.3d 62 (2019); which we summarize in relevant part. In 2017, while the defendant was serving a sentence of probation for a prior conviction of possession of marijuana with intent to sell, probation officers conducting a visit at the defendant's home discovered marijuana in the defendant's possession. Consequently, the state charged the defendant, in two separate informations, with one count of sale of a controlled substance in violation of § 21a-277 (b), and with one count of violation of probation in violation of General Statutes § 53a-32.[3]

Relevant to this case, the defendant subsequently filed motions to dismiss, arguing, among other things, that the state's criminalization of the sale of marijuana

[2] Hereinafter, all references to § 21a-277 in this opinion are to the 2017 revision of the statute.

[3] The defendant was also charged with one count of possession of one-half ounce or more of marijuana within 1500 feet of a school in violation of General Statutes (Rev. to 2017) § 21a-279 (b). The state subsequently entered a nolle prosequi with respect to this charge.

State *v.* Bradley

was based on a racially discriminatory motive and, therefore, violated the equal protection clause of the fourteenth amendment to the United States constitution and the equal protection guarantees under article first, § 20, of the Connecticut constitution, as amended. Following a hearing on the defendant's motions, the trial court ordered the parties to file supplemental memoranda of law regarding the issue of standing. In particular, the court ordered the parties to address whether the defendant, who the trial court found to be Caucasian, could raise an equal protection claim on the ground that the legislature's purpose in enacting a law criminalizing the sale of marijuana was to discriminate against members of a minority group of which the defendant was not a member.[4] In his supplemental memoranda in support of his motions to dismiss, the defendant argued that his prosecution under § 21a-277 (b) violated his due process right not to be convicted under an unconstitutional statute. Although the defendant conceded that he is not a member of a minority group that the statute was allegedly enacted to discriminate against, he claimed that he had standing to pursue this challenge in his individual capacity, arguing that he is aggrieved by the application of an unconstitutional law.

_____

[4] We acknowledge the numerous complexities of race. For example, critical race theorists maintain that "race and races are products of social thought and relations. Not objective, inherent, or fixed, they correspond to no biological or genetic reality; rather, races are categories that society invents, manipulates, or retires when convenient." R. Delgado & J. Stefancic, Critical Race Theory: An Introduction (New York University Press 3d Ed. 2017) p. 9. In this case, however, the defendant does not dispute the trial court's finding that he is Caucasian. Although the defendant claimed in his motions to dismiss that the legislature's purpose in enacting a statute criminalizing the sale of marijuana was to discriminate against African Americans and Mexican Americans, the defendant makes no argument that he identifies as African American or Mexican American. Rather, the defendant consistently argues that, although he is *not* a member of either class, he is aggrieved because of his prosecution and conviction under an unconstitutional statute. Accordingly, we confine our analysis to whether a Caucasian defendant has standing to raise a challenge to a statute on the basis that it violates the equal protection rights of a class of persons of which he is not a member.

The trial court agreed with the defendant, reasoning that a party need not be a member of the class discriminated against in order to have standing to challenge an allegedly unconstitutional statute. The court noted that, because the defendant was charged—and could be convicted—under the challenged statute, he established classical aggrievement consistent with our holding in *State* v. *Long*, 268 Conn. 508, 533, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004). Ultimately, however, the trial court denied the defendant's motions to dismiss on the merits, finding that the defendant could not prove that the legislature's purpose in enacting the law criminalizing the sale of marijuana was to discriminate against African Americans or Mexican Americans.

Thereafter, the defendant entered pleas of nolo contendere to the charges of sale of a controlled substance and violation of probation, conditioned on preserving his right to appeal from the conviction of sale of a controlled substance and finding of violation of probation based on the trial court's denial of his motions to dismiss. The trial court sentenced the defendant for his conviction of sale of a controlled substance to an unconditional discharge, and, on his violation of probation, the defendant's probation was revoked, and he was sentenced to a term of five and one-half years of incarceration, execution suspended, and two years of probation.

The defendant appealed from the judgments to the Appellate Court, claiming that the trial court improperly denied his motions to dismiss. *State* v. *Bradley*, supra, 195 Conn. App. 41. The defendant again argued that Connecticut's statute criminalizing the sale of marijuana violates the equal protection clause of the United States constitution. Id. The defendant did not, however, challenge the trial court's denial of his alternative equal protection claim under the Connecticut constitution.

State *v.* Bradley

Id. The Appellate Court subsequently affirmed the judgments of the trial court on the alternative ground that the defendant lacked standing to assert his claim. Id., 59.

Thereafter, the defendant filed a petition for certification to appeal, which we granted, limited to the following two issues: (1) "Did the Appellate Court correctly conclude that the defendant did not have standing to raise a due process challenge to his prosecution under a criminal statute, namely, [§ 21a-277 (b)], that he claims was enacted for the purpose of discriminating against minority groups to which he does not belong?" And (2) "[i]f the answer to the first question is 'no,' was § 21a-277 (b) enacted for the purpose of discriminating against African Americans and/or Mexican Americans?" *State* v. *Bradley*, 334 Conn. 925, 223 A.3d 379 (2020).

On appeal to this court, the defendant maintains that he has standing to challenge his conviction of sale of a controlled substance in violation of § 21a-277 (b) on the ground that it violates his right to due process. Specifically, the defendant contends that the statute criminalizing the sale of marijuana violates the equal protection clause of the United States constitution because it was enacted for the purpose of discriminating against African Americans and Mexican Americans, and, consequently, the statute is unconstitutional. The defendant argues that—regardless of the challenger's own race or ethnicity—every person has a right to be free from conviction under an unconstitutional statute. Thus, the defendant contends that the application of § 21a-277 (b) to him, as a basis for his conviction, violates his due process rights. On this basis, the defendant argues that he has established classical aggrievement as articulated by this court in *State* v. *Long*, supra, 268 Conn. 531–32, because he has been "specially and injuriously affected" by the application of § 21a-277 (b), insofar as he has been charged, prosecuted, and con-

State *v.* Bradley

victed under the statute. (Internal quotation marks omitted.) Id., 532.

The state disagrees and contends that the Appellate Court correctly concluded that the defendant lacked standing to claim that § 21a-277 (b) violates the equal protection rights of minorities because the defendant is not a member of a minority class. Specifically, the state claims that the defendant cites no authority for the proposition that there is a "due process right not to be prosecuted under a statute [that] violates the equal protection rights of others . . . ." It also contends that the defendant has not been aggrieved by the legislature's enactment of a law that allegedly discriminates against African Americans and Mexican Americans. Finally, the state contends that, "[although] the defendant, and indeed the state, share the concern of 'all members of the community as a whole' in preventing discrimination, the defendant cannot demonstrate a 'specific, personal and legal interest in [the subject matter of the challenged action],' " as required to demonstrate classical aggrievement under *State* v. *Long*, supra, 268 Conn. 531. We agree with the state.

We begin our analysis with the standard of review and relevant legal principles. "The issue of standing implicates the trial court's subject matter jurisdiction and therefore presents a threshold issue for our determination." *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 511, 518, 970 A.2d 583 (2009). "Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 214, 982 A.2d 1053 (2009).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or

State *v.* Bradley

representative capacity, some real interest in the cause of action . . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring [an action] or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a [well settled] twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) Id., 214–15.

This court has explained that the two prongs of the standing analysis are distinct and, thus, cannot be conflated. See, e.g., *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 122–23 and n.12, 627 A.2d 1257 (1993) (noting that party claiming aggrievement must demonstrate "certainty of a specific personal and legal interest in the subject matter of the decision," which is separate from "the second prong of the aggrievement test that requires only a possibility . . . that some legally protected interest has been adversely affected" (internal quotation marks omitted)). When a defendant cannot demonstrate that he has a specific, personal and legal interest in the subject matter of the challenged action, a court need not decide whether his interest

State *v.* Bradley

has been specially and injuriously affected. See, e.g., *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, 214 Conn. 726, 730–34, 573 A.2d 736 (1990) (explaining that, when plaintiffs could not establish legal interest in subject matter of certain settlement agreements at issue, as distinct from interest of general public, it was unnecessary for court to consider second part of test for aggrievement).

We first note that the defendant challenges his conviction, as well as the constitutionality of the state's statute prohibiting the sale of marijuana, in his individual capacity. He does not claim that he was authorized by statute to bring such a challenge or that he has third-party standing to bring the challenge in a representational capacity on behalf of others. Rather, the defendant claims that he has been aggrieved by the statute's unconstitutionality because he was prosecuted and convicted thereunder. Accordingly, we confine our analysis to whether the defendant has standing, in his individual capacity, to challenge the state's statute criminalizing the sale of marijuana on the ground that it violates the equal protection rights of others.

To substantiate his claim to standing, the defendant principally relies on this court's decision in *State* v. *Long*, supra, 268 Conn. 508. In *Long*, the defendant, who had been charged with assault in the second degree, was found not guilty by reason of mental disease or defect and was subsequently committed to the custody of the Commissioner of Mental Health and Addiction Services for initial confinement and examination. Id., 511–12. Following a mandatory psychiatric evaluation, "the commissioner issued a report concerning the defendant's mental health . . . ." (Footnotes omitted.) Id., 512. On the basis of the report, the trial court ultimately found that the defendant was "a person who should be confined" and ordered him to be committed

State *v.* Bradley

to the jurisdiction of the Psychiatric Security Review Board. (Internal quotation marks omitted.) Id. Although the defendant was initially to be committed to the jurisdiction of the board for a period of five years, the state successfully petitioned the trial court to extend the defendant's commitment four additional times pursuant to the court's authority under the challenged statute. Id., 512–13. When the state, for a fifth time, filed a petition for recommitment, the defendant moved to, among other things, dismiss the state's petition. Id., 513. The defendant argued that, once an acquittee reaches his maximum term of commitment, any order granting the state's petition for recommitment pursuant to the challenged statute was unconstitutional. Id. The trial court ultimately granted the defendant's motion to dismiss and concluded, in relevant part, that the challenged statute, as applied to the defendant, deprived him of his liberty without giving him the right to a mandatory periodic judicial review of his commitment, a right that is afforded to convicted prisoners who are civilly committed to psychiatric treatment facilities after they are incarcerated. See id., 514.

On appeal, the state claimed, among other things, that the defendant lacked standing to assert his constitutional claim, arguing that the defendant had not satisfied the traditional, two-pronged test for classical aggrievement. See id., 527–28. The state did not claim that the defendant lacked a "specific, personal and legal liberty interest in [the subject matter of the challenged action]"; id., 532; as it was clear that the defendant, an acquittee challenging his recommitment, had a specific interest in a statute prescribing standards for acquittee recommitment proceedings. Instead, the state challenged the defendant's ability to meet the second prong of the test. Id. In particular, the state claimed that the defendant could not prove that he was "specially and injuriously affected" by his recommitment because, as

State *v.* Bradley

an acquittee, the defendant received more judicial review of his commitment than a civil committee would have been entitled to receive. (Internal quotation marks omitted.) Id. This court ultimately concluded that the defendant had standing to challenge the statute at issue, explaining that a showing of classical aggrievement can rest on the likelihood of a defendant's future recommitment. Id., 533. Specifically, we explained: "[I]n the present case, the defendant challenges the acquittee recommitment statute . . . which, if applied to him in the future, could subject him to further recommitment that adversely would affect his liberty interest. Moreover, the trial court specifically found at the most recent recommitment hearing that the defendant still suffered from a mental illness and posed a danger to others were he discharged from confinement. These factual findings demonstrate a genuine likelihood that the defendant is susceptible to the deprivation of his liberty interest in the future via recommitment . . . . Consequently, because the defendant risks actual prospective deprivation of his liberty interest under the challenged statute, we conclude that he is classically aggrieved, and has standing to challenge the statute." (Internal quotation marks omitted.) Id.

The defendant relies on this court's holding in *Long* to establish his standing in this case. Specifically, the defendant maintains that he was aggrieved because he had been prosecuted and convicted under an unconstitutional statute. In contrast to the defendant in *Long*, the defendant in this case correctly notes that he faces more than a "genuine likelihood" of *future* application of the challenged statute; he has *actually been prosecuted and convicted* under the statute, and, thus, he contends that he satisfies the test for aggrievement. The defendant's argument, however, collapses the two distinct inquiries under the two part standing analysis. Antecedent to his claim that his interest has been spe-

State *v.* Bradley

cially and injuriously affected, the defendant must establish that he has a "specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole." (Internal quotation marks omitted.) Id., 531. Because the defendant has not specifically made this showing, he is not "classically aggrieved," as that concept is defined by our standing jurisprudence.

As the Appellate Court correctly noted, our holding in *Long* cannot be construed as conferring on parties a right to assert constitutional challenges, in their individual capacities, based on the alleged violation of *others'* constitutional rights. See *State* v. *Bradley*, supra, 195 Conn. App. 47. Indeed, this court has previously explained: "Only members of a class whose constitutional rights are endangered by a statute may ask to have it declared unconstitutional. . . . Courts are instituted to give relief to parties whose rights have been invaded, and to give it at the instance of such parties; and a party whose rights have not been invaded cannot be heard to complain if the court refuses to act at his instance in righting the wrongs of another who seeks no redress." (Citations omitted; internal quotation marks omitted.) *Shaskan* v. *Waltham Industries Corp.*, 168 Conn. 43, 49–50, 357 A.2d 472 (1975). *Long*, instead, stands for the proposition that, although a party has individual standing to challenge alleged violations of his own rights, such challenges are not necessarily confined to ongoing violations but may also include future violations of such rights that are reasonably likely to occur. See *State* v. *Long*, supra, 268 Conn. 532–33. The defendant in *Long* was not aggrieved simply because he faced future commitment. It was the combination of this future threat and the fact that he was also a member of the class of insanity acquittees whose rights he sought to vindicate that gave him standing. Indeed,

State *v.* Bradley

the parties in *Long* agreed that the defendant had a
"specific, personal and legal liberty interest in [the sub-
ject matter of the challenged action]," as the defendant
was an acquittee whose personal and legal interests
were squarely implicated by the challenged statute. Id.,
532. Our analysis, accordingly, was confined to the sec-
ond prong of the two part test for classical aggrieve-
ment, namely, whether the party's interest was "spe-
cially and injuriously affected" by the challenged action.
(Internal quotation marks omitted.) Id. In *Long*, we
did not discuss the first prong of the test for classical
aggrievement, let alone determine whether a defendant
who asserts a violation of the constitutional rights of
others satisfies the first prong. In sum, our holding in
*Long*—a case in which the parties agreed that the first
prong of our test for classical aggrievement was satis-
fied—is wholly inapplicable to the present case, in
which the question turns on whether the defendant has
satisfied the first prong of the classical aggrievement
test.

Our case law addressing the first prong of the test
for classical aggrievement states that a defendant has
a specific, personal and legal interest when his property
rights are affected; see, e.g., *Brady-Kinsella* v. *Kinsella*,
154 Conn. App. 413, 417, 106 A.3d 956 (2014) (conclud-
ing that, in marital dissolution action, plaintiff had "spe-
cific, personal, and legal interest in equitable
distribution of the marital property"), cert. denied, 315
Conn. 929, 110 A.3d 432 (2015); when he is within the
class of persons implicated by the challenged statute;
see, e.g., *State* v. *Long*, supra, 268 Conn. 533 (holding
that acquittee had standing to challenge statute per-
taining to acquittee recommitment); *Ramos* v. *Vernon*,
254 Conn. 799, 810–11, 761 A.2d 705 (2000) (holding
that minor and his mother had standing to challenge
town ordinance that imposed curfew on minors and
corresponding penalties for minors' parents); and when

State *v.* Bradley

the defendant's conduct is the very essence of the dispute. See, e.g., *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 219, 231, 602 A.2d 1019 (1992) (noting that, in arguing that Freedom of Information Commission had wrongfully denied them party status, plaintiffs satisfied first prong of aggrievement test because plaintiffs' conduct during "mock arrest" was substance of "board's investigation, executive session and vote"); *Cannavo Enterprises, Inc.* v. *Burns*, 194 Conn. 43, 47, 478 A.2d 601 (1984) (holding that defendant had personal and legal interest in subject matter of default judgment, namely, whether defendant should be held liable for services rendered by plaintiff). Common among all of these cases is the direct connection between the challenger and the subject matter of the dispute, a correlation between the harm to be avoided and the person subjected to the harm. This correlation cannot be found here. The defendant has not demonstrated a *specific* interest in his underlying equal protection challenge to Connecticut's criminalization of the sale of marijuana. The defendant does not claim to be a member of the group of racial or ethnic minorities that he asserts the statute was enacted to discriminate against. We can all agree that nonminorities might share in the general interest in eradicating racial discrimination, and, indeed, the defendant's own asserted interest—premised on an equal protection claim to vindicate others' rights—cannot be distinguished from that of the interest of the general community, at large.

Furthermore, the defendant's standing argument is circular. To frame his due process argument, the defendant maintains that he was charged and convicted under an unconstitutional statute, the constitutionality of which is the subject of the merits of his underlying claim, which we cannot reach unless we conclude that the defendant has standing to assert such a claim. The defendant impermissibly relies on this court's assumption of certain predicate conclusions—namely, that the

State *v.* Bradley

challenged statute is unconstitutional—prior to our disposition regarding the defendant's standing to challenge the constitutionality of the statute at issue. In other words, the defendant's argument that he has standing because he has a right not to be convicted under an unconstitutional statute assumes the merits of his equal protection claim.

The defendant also contends that Justice Ruth Bader Ginsburg's concurrence in *Bond* v. *United States*, 564 U.S. 211, 226, 131 S. Ct. 2355, 180 L. Ed. 2d 269 (2011) (Ginsburg, J., concurring), supports his contention that he has standing based on a due process right not to be convicted under an unconstitutional statute. We are not persuaded. In *Bond*, the United States Supreme Court considered whether a citizen of Pennsylvania, Carol Anne Bond, had the authority to challenge a federal statute on the ground that it violated the tenth amendment to the United States constitution or, alternatively, whether her rights to challenge the statute belonged to the state. Id., 214. The majority concluded that Bond, who was indicted for violating the federal statute, had standing to bring her tenth amendment claim, reasoning that an "individual, in a proper case, can assert injury from governmental action taken in excess of the authority that federalism defines." Id., 220. It emphasized that, when a party can establish article three standing, namely, proof of "actual or imminent harm that is concrete and particular, fairly traceable to the conduct complained of, and likely to be redressed by a favorable decision"; id., 225; "she is not forbidden to object that her injury results from disregard of the federal structure of our [g]overnment." Id., 225–26. Because Bond met the requirements for article three standing, and because she asserted a cognizable tenth amendment violation, the court concluded that she had standing to raise her claims.[5] See id.

[5] The United States Supreme Court's holding in *Bond* has largely been interpreted as confirming federalist principles. The court ultimately con-

State *v.* Bradley

Justice Ginsburg joined the majority's opinion but wrote separately to emphasize one observation. In her concurrence, Justice Ginsburg maintained that— regardless of whether a defendant asserted a tenth amendment challenge, or a due process challenge, or one rooted in the establishment clause—"a court has no 'prudential' license to decline to consider whether the statute under which the defendant has been charged lacks constitutional application to her conduct." Id., 226–27 (Ginsburg, J., concurring). Whereas the majority held that a defendant has standing to assert a claim alleging a violation of the *tenth amendment*, Justice Ginsburg asserted that—regardless of the alleged constitutional violation a defendant asserts—courts "must entertain the objection—and reverse the conviction— even if the right to equal treatment resides in someone other than the defendant." Id., 227 (Ginsburg, J., concurring).

Here, the defendant relies on Justice Ginsburg's concurrence for the proposition that he has standing to challenge the constitutionality of a statute that violates the equal protection rights of others. The defendant's argument, however, centers on an isolated quote from the concurrence, in which Justice Ginsburg wrote: "[A]ny . . . defendant . . . has a personal right not to be convicted under a constitutionally invalid law. . . . Due process . . . is a guarantee that a man should be tried and convicted only in accordance with valid laws

cluded: "Just as it is appropriate for an individual, in a proper case, to invoke [separation of powers] or [checks and balances] constraints, so too may a litigant, in a proper case, challenge a law as enacted in contravention of constitutional principles of federalism." *Bond* v. *United States*, supra, 564 U.S. 223–24. Indeed, among scholars, the court's decision in *Bond* has provided an opportunity to opine on contemporary and future federalism doctrine. See generally, e.g., H. Gerken, Comment, "Slipping the *Bonds* of Federalism," 128 Harv. L. Rev. 85 (2014); see also, e.g., A. LaCroix, "Redeeming *Bond*?," 128 Harv. L. Rev. F. 31 (2014) (response to H. Gerken, supra, 128 Harv. L. Rev. 85).

State *v.* Bradley

of the land.'' (Citations omitted; internal quotation marks omitted.) Id., 226 (Ginsburg, J., concurring). The defendant reasons that, because he was convicted under a statute that he claims violates equal protection, his due process right to be free from "convict[ion] under a constitutionally invalid law" has been violated. Id.

The defendant's reliance on Justice Ginsburg's concurrence is misplaced. In addition to the fact that it is neither controlling with respect to this court nor binding on the United States Supreme Court, Justice Ginsburg's concurrence in *Bond* relies on precedent distinguishable from the case now before us, including federal third-party standing precedent.[6] See, e.g., *Eisenstadt* v. *Baird*, 405 U.S. 438, 440, 445–46, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972) (holding that defendant, who was convicted of giving contraceptive to woman in violation of state statute, could prove aggrievement in representative capacity on behalf of unmarried persons entitled to contraceptives); see also, e.g., *Craig* v. *Boren*, 429 U.S. 190, 191–92, 194–97, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976) (holding that licensed vendor of beer could bring action challenging state statute that prohibited sale of beer to males under age of twenty-one and females under age of eighteen on basis of gender discrimination

_____

[6] In addition to her reliance on third-party standing cases, Justice Ginsburg cited *Grayned* v. *Rockford*, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972), a case holding that a defendant had standing to assert an overbreadth challenge to a local ordinance. *Bond* v. *United States*, supra, 564 U.S. 227 (Ginsburg, J., concurring); see *Grayned* v. *Rockford*, supra, 114. According to United States Supreme Court precedent, a defendant is "permitted to raise [a statute's] vagueness or unconstitutional overbreadth as applied to others" under the first amendment to the United States constitution. (Internal quotation marks omitted.) *Gooding* v. *Wilson*, 405 U.S. 518, 521, 92 S. Ct. 1103, 31 L. Ed. 2d 408 (1972). First amendment overbreadth challenges are unique in that speakers may challenge a statute because it is overbroad as applied to others, not themselves. See, e.g., *New York* v. *Ferber*, 458 U.S. 747, 769, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982) (empowering persons to "attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected"). The defendant has not asserted any such first amendment overbreadth challenge in this case or demonstrated that a similar exception to challenging the rights of others exists in this context.

State *v.* Bradley

because buyers' market of vendor was effectively constricted by statute). We have never applied the federal third-party standing doctrine under Connecticut law, and, as we previously discussed in this opinion, the defendant does not assert that he has standing in a representative capacity. Accordingly, we are not persuaded by the defendant's reliance on Justice Ginsburg's concurrence in *Bond*.

The defendant also relies on a number of other federal cases for the proposition that a defendant has standing to challenge a statute on the ground that it is unconstitutional as applied to others. Notably, nearly all of the cases the defendant relies on also refer exclusively to third-party standing.[7] These cases are inapplicable to the present case because the defendant does not assert a third-party standing claim. Third-party standing is a distinct legal concept from the individual standing argument the defendant advances to support his own aggrievement.[8]

[7] The defendant also cites *Planned Parenthood of Central Missouri* v. *Danforth*, 428 U.S. 52, 96 S. Ct. 2831, 49 L. Ed. 2d 788 (1976), and *Doe* v. *Bolton*, 410 U.S. 179, 93 S. Ct. 739, 35 L. Ed. 2d 201 (1973), cases in which the United States Supreme Court concluded that physicians had standing to challenge statutes criminalizing abortion because, in both cases, the physicians asserted a "sufficiently direct threat of personal detriment," as their conduct was of the type the statutes criminalized. (Internal quotation marks omitted.) *Planned Parenthood of Central Missouri* v. *Danforth*, supra, 62, quoting *Doe* v. *Bolton*, supra, 188. In contrast to the physicians in *Doe* and *Danforth*, who had standing to assert claims based on the unconstitutionality of the statute at issue because the statutes affected their rights to render abortion services and also subjected them to criminal punishment, the defendant here does not allege a specific injury to himself as a seller of marijuana. Put differently, the defendant challenges his conviction under § 21a-277 (b) because it violates the equal protection rights of others, *not* because he was injured by the application of the statute as a vendor of marijuana. Thus, precedent that bases a party's standing on the intertwined relationship between doctor and patient—or buyer and seller—is inapplicable.

[8] The United States Supreme Court has explained that a party may bring an action on behalf of third parties when it meets the requirements of article three standing and makes two additional showings. See, e.g., *Kowalski* v. *Tesmer*, 543 U.S. 125, 129–30, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004). First,

State *v.* Bradley

The defendant cites no authority, and we found none, in which a court concluded that a defendant had standing—in his *individual* capacity—to assert a claim based on the alleged violations of others' constitutional rights. When a defendant has not established individual standing and has not asserted a claim based on third-party standing, this court is without subject matter jurisdiction to consider the merits of his underlying claim. Cf. *Steeneck* v. *University of Bridgeport*, 235 Conn. 572, 589, 668 A.2d 688 (1995) ("[when] a plaintiff lacks standing to sue, the court is without subject matter jurisdiction").

Although federal precedent has permitted parties to establish standing by proving classical aggrievement in a representative capacity based on alleged violations of others' constitutional rights, it has never expanded the scope of classical aggrievement in an individual capacity to eliminate the requirement that a party must be personally aggrieved by the alleged violation. Because the defendant in this case has failed to establish any specific, personal and legal interest in the equal protection argument, which forms the basis of his due process claim, challenging the state's law criminalizing the sale of marijuana, as distinguished from a general interest, the defendant has not established that he is classically aggrieved and, therefore, does not have standing to assert any such claim. Accordingly, we affirm the judgment of the Appellate Court and decline to consider the merits of the defendant's constitutional claim.

"the party asserting the right [must have] a 'close' relationship with the person who possesses the right. . . . Second . . . there [must exist] a 'hindrance' to the possessor's ability to protect his own interests." (Citation omitted.) Id., 130, quoting *Powers* v. *Ohio*, 499 U.S. 400, 411, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991). The defendant expressly maintained before the Appellate Court; *State* v. *Bradley*, supra, 195 Conn. App. 50; and at oral argument before this court, that he does not claim to have met the requirements to assert any such representational claim.

State *v.* Bradley

The judgment of the Appellate Court is affirmed.

In this opinion ROBINSON, C. J., and D'AURIA and KAHN, Js., concurred.

ECKER, J., dissenting. The majority holds that the defendant, William Hyde Bradley, does not have standing to challenge the constitutionality of the statute under which he was convicted, General Statutes § 21a-277 (b). This holding is counterintuitive because the standing doctrine exists, as the majority correctly states, to ensure that a litigant has a " 'real interest,' " as opposed to merely a " 'general interest,' " in the subject matter of the controversy. "Standing . . . is a *practical* concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions [that] may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Emphasis added; internal quotation marks omitted.) *Soto* v. *Bushmaster Firearms International, LLC*, 331 Conn. 53, 96–97, 202 A.3d 262, cert. denied sub nom. *Remington Arms Co., LLC* v. *Soto*, U.S. , 140 S. Ct. 513, 205 L. Ed. 2d 317 (2019). In my view, a defendant facing prosecution under § 21a-277 (b), which carries a maximum sentence of seven years of incarceration and a $25,000 fine for a first offense; see General Statutes § 21a-277 (b) (2) (A); has sufficient motivation vigorously to pursue a claim that the statute is unconstitutional under the equal protection clause of the United States constitution, regardless of the defendant's race or ethnicity. I respectfully dissent for this reason.

Elemental to the rule of law is the precept that "an act of the legislature, repugnant to the constitution, is void . . . ." *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803). Justice Ruth Bader Ginsburg stated a corollary to that proposition in *Bond* v. *United*

State *v.* Bradley

*States*, 564 U.S. 211, 131 S. Ct. 2355, 180 L. Ed. 2d 269 (2011): ''[a criminal] defendant . . . has a personal right not to be convicted under a constitutionally invalid law.'' Id., 226 (Ginsburg, J., concurring). Among other authorities, Justice Ginsburg cites in support an article written by Professor Richard H. Fallon, Jr., a leading legal scholar in the field of constitutional law. See id., citing R. Fallon, ''As-Applied and Facial Challenges and Third-Party Standing,'' 113 Harv. L. Rev. 1321, 1331–33 (2000). Professor Fallon explains the connection between Chief Justice John Marshall's ''valid law''[1] pronouncement in *Marbury* and a defendant's standing to challenge a conviction under an allegedly invalid criminal law: ''Within [Professor Fallon's] understanding of constitutional law, the valid rule requirement is fundamental. Its roots lie in the history and structure of the [c]onstitution and in the deeper values that the [c]onstitution serves. The notion that an 'invalid law' is not law at all underlies *Marbury* . . . . And the foundations of *Marbury*, in turn, inhere in the ideal of the rule of law, which demands that '[t]he law should rule officials, including judges,' and precludes them from imposing legal disabilities not authorized by (valid) law. This ideal explains why it is almost universally acknowledged that criminal defendants must be set free when the statutes under which they were convicted are held invalid (under the [f]irst [a]mendment, for example), even when their conduct is not absolutely privileged against governmental regulation, and even when a lawmaking authority has attempted to prohibit their conduct. If the statute under which a defendant is convicted is invalid . . . the defendant's conviction must be reversed for the sole and simple reason that there is no constitutionally valid rule of law under which the

---

[1] The '' 'valid rule requirement' '' encompasses ''the notion that everyone has a personal constitutional right not to be subjected to governmental sanctions except pursuant to a constitutionally valid rule of law.'' R. Fallon, supra, 113 Harv. L. Rev. 1331.

State *v.* Bradley

defendant could be sanctioned . . . . Through the history of American constitutionalism, there has been wide debate about which (if any) 'remedies' for constitutional violations are constitutionally required, but never about the proposition that a defendant cannot be sanctioned without the authority of a valid law.'' (Footnotes omitted.) R. Fallon, supra, 1331–33.

The majority in the present case points out that Justice Ginsburg's opinion in *Bond* is a concurrence and finds it unpersuasive because the cases on which she relies involve claims of third-party standing. Justice Ginsburg's citation to third-party standing cases does not reflect any doctrinal confusion on her part. Her concurring opinion makes two points. First, as I discussed, Justice Ginsburg contends that a criminal defendant has first-party standing because he ''has a *personal* right not to be convicted under a constitutionally invalid law.'' (Emphasis added.) *Bond* v. *United States*, supra, 564 U.S. 226 (Ginsburg, J., concurring). She relies on a fundamental due process principle, not third-party standing cases, in support of this assertion. See id., 226–27 (Ginsburg, J., concurring), citing *North Carolina* v. *Pearce*, 395 U.S. 711, 739, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (Black, J., concurring in part and dissenting in part) (''[d]ue process . . . is a guarantee that a man should be tried and convicted only in accordance with valid laws of the land''), and *Ex parte Siebold*, 100 U.S. 371, 376–77, 25 L. Ed. 717 (1880) (''[a] conviction under [an unconstitutional law] is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment'').

Justice Ginsburg then makes a second point, for which she cites the third-party standing cases: if a third party has standing to challenge ''criminal laws infected with discrimination,'' then, a fortioari, the person actually prosecuted and punished under the allegedly unconstitutional law must have standing. *Bond* v.

State *v.* Bradley

*United States*, supra, 564 U.S. 227 (Ginsburg, J., concurring); see id., 227 ("[t]he [c]ourt must entertain the objection [of discriminatory animus]—and reverse the conviction—even if the right to equal treatment resides in someone other than the defendant").[2] If a litigant has standing to challenge an invalid statute as a third party on the basis of the harm it inflicts on another person, Justice Ginsburg states, then, of course, the person harmed (i.e., the criminal defendant) must have first-party standing to challenge the statute being enforced directly against him in a criminal prosecution. Cf. *Campbell* v. *Louisiana*, 523 U.S. 392, 400, 118 S. Ct. 1419, 140 L. Ed. 2d 551 (1998) (holding that white defendant had third-party standing to raise equal protection challenge to discriminatory selection of grand jurors and also "ha[d] standing to litigate [the violation of] his . . . own due process rights").

I regret that the majority opinion does not give greater weight to Justice Ginsburg's trenchant analysis. I would suggest that the defendant in the present case, like the petitioner in *Bond*, has a personal interest in vindicating the underlying constitutional values at stake.[3] The

[2] In addition, numerous scholars have pointed out that the third-party standing cases easily can be recast as first-party standing cases. See, e.g., W. Fletcher, "The Structure of Standing," 98 Yale L.J. 221, 244 (1988) ("Properly understood . . . [third-party] standing cases are not conceptually different from other standing cases. In [third-party] standing cases, as in all standing cases, the issue is a question of law on the merits: Does the plaintiff have the right to enforce the legal duty in question?"); see also R. Fallon, supra, 113 Harv. L. Rev. 1360 (observing that "commentators have argued that many, if not most, seeming departures from the prohibition against third-party standing can be understood as applications of the familiar valid rule requirement [i.e., as first-party standing cases]").

[3] The majority contends that the defendant's standing argument is circular because his contention that "he has a right not to be convicted of [violating] an unconstitutional statute assumes the merits of his equal protection claim." The "circular" structure of defendant's argument is a relatively common feature of many cases in which a jurisdictional issue and the merits become intertwined or even indistinguishable. See, e.g., *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 466 n.11, 239 A.3d 272 (2020) (recognizing that, "in certain circumstances the question of jurisdiction [may be so] intertwined

State *v.* Bradley

defendant has a *personal* right not to be convicted under a constitutionally invalid rule and to vindicate the precious values that, for the past 150 years, have been enshrined in the equal protection clause. Racial and ethnic equality is a value from which every individual derives a profound and enduring benefit. Cf. *Trafficante* v. *Metropolitan Life Ins. Co.*, 409 U.S. 205, 210, 93 S. Ct. 364, 34 L. Ed. 2d 415 (1972) (holding that white tenant had standing to bring suit for racial discrimination in housing because both white and black tenants are injured by "the loss of important benefits from interracial associations"). Indeed, it becomes increasingly obvious each day that all of us, regardless of our own particular race or ethnicity, hold a collective interest in equal treatment for all persons, and that such equality can be achieved only if nonminorities stand with other oppressed groups to enforce and vindicate equal rights. The goal of equality under the law is doomed to fail if only the oppressed groups themselves are permitted to advocate for equal treatment.

Finally, although there may be other litigants with a stronger interest than the defendant in vindicating the abstract principles underlying the equal protection clause, the standing doctrine does not require a litigant to be the best (or even a strong) representative of the interest at stake. See, e.g., *Saunders* v. *KDFBS, LLC*, 335 Conn. 586, 604, 239 A.3d 1162 (2020) ("[a]ggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected" (internal quotation marks omitted)). Various cases striking down discriminatory statutes animated by archaic and overbroad gen-

with the merits of the case [such] that the issue of whether the court has jurisdiction over the plaintiffs' claims and whether the plaintiffs ultimately can prevail on those claims appear to turn on the same question" (internal quotation marks omitted)); *Angersola* v. *Radiologic Associates of Middletown, P.C.*, 330 Conn. 251, 277–78, 193 A.3d 520 (2018) (same).

eralizations regarding gender stereotypes, for example, were litigated by male plaintiffs. See, e.g., *Califano* v. *Goldfarb*, 430 U.S. 199, 201, 208, 97 S. Ct. 1021, 51 L. Ed. 2d 270 (1977) (man challenged gender based discrimination under Federal Old-Age, Survivors, and Disability Insurance Benefits program, and court held that statute was unconstitutional because "female insureds received less protection for their spouses solely because of their sex"); *Weinberger* v. *Wiesenfeld*, 420 U.S. 636, 641, 651, 95 S. Ct. 1225, 43 L. Ed. 2d 514 (1975) (man challenged provision of Social Security Act, arguing that it was "unconstitutional to the extent that men and women are treated differently," and court agreed, holding that "the [gender based] distinction . . . is entirely irrational"). That fact may be ironic, but it does not dilute the importance of the right being vindicated or the personal interest motivating the party litigating the claim. The defendant in the present case was convicted and sentenced under what he claims to be an invalid penal law. The defendant therefore has a distinct personal interest sufficient to ensure that he vigorously will litigate his constitutional attack on the legitimacy of the statute

I would reverse the judgment of the Appellate Court and remand the case to that court for a decision on the merits of the defendant's claim.

———————————————